

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Administrative Appeals Office*
5900 Capital Gateway Drive, Mail Stop 2090
Camp Springs, MD 20588-0009

**U.S. Citizenship
and Immigration
Services**

MATTHEW CHANDLER
2398 SW RANCH AVE
PORT ST LUCIE FL  34953

DATE: MAY. 24, 2024

FILE #:  A231 881 956
I-290B RECEIPT #:  IOE 09 242 74251

IN RE:      MATTHEW CHANDLER

ON BEHALF OF APPLICANT:

AHMAD YAKZAN, ESQUIRE
AMERICAN DREAM LAW OFFICE PLLC
4815 E BUSCH BLVD STE 206
TAMPA FL  33617

EXHIBIT A

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case. All documents have been returned to the office that originally decided your case. If you have any further questions about your case, please call the USCIS Contact Center at (800) 375-5283.

Sincerely,

Susan Dibbins
Chief, Administrative Appeals Office

REV 3/2023

www.uscis.gov



**U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the Administrative Appeals Office**

In Re: 32598915

Date: MAY 24, 2024

Appeal of Orlando, Florida Field Office Decision

Form N-600, Application for Certificate of Citizenship

The Applicant seeks a Certificate of Citizenship to reflect that he acquired U.S. citizenship from his father under section 301(g) of the Act, 8 U.S.C. § 1401(g), amended by Act of November 14, 1986, Pub. L. No. 99-653, 100 Stat. 3655. The Director of the Orlando, Florida Field Office denied the Applicant's Form N-600, Application for Certificate of Citizenship, concluding that the Applicant was not residing in the United States and therefore did not satisfy the requirements of section 301(g) of the Act. The Director also concluded that because the Applicant was not physically present in the United States, he did not satisfy the requirements to derive U.S. citizenship under section 320 of the Act. Finally, the Director concluded that because the Applicant was over the age of 18 years, he did not satisfy the requirements to attain U.S. citizenship under section 322 of the INA. The matter is now before us on appeal. 8 C.F.R. § 103.3. The Applicant bears the burden of proof to demonstrate eligibility by a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010). We review the questions in this matter de novo. *Matter of Christo's, Inc.*, 26 I&N Dec. 537, 537 n.2 (AAO 2015). Upon de novo review, we will withdraw the Director's decision and remand the matter for entry of a new decision consistent with the following analysis.

The applicable law for acquiring U.S. citizenship at birth is determined by the law in effect at the time of the individual's birth. *See e.g., Chau v. Immigration and Naturalization Service*, 247 F.3d 1026, 1029 n.3 (9th Cir. 2001). The record reflects that the Applicant was born abroad in Germany in June 1991 to married parents. Consequently, current section 301(g) of the Act, in effect at the time of the Applicant's birth, applies to his citizenship claim.

With his Form N-600 and on appeal, the Applicant claims that he acquired citizenship at birth in 1991 through his father, who he maintains had previously derived U.S. citizenship through the father's mother (the Applicant's paternal grandmother) when she naturalized as a U.S. citizen in 1975.[1] The Applicant's biological mother is a noncitizen.

---

[1] Although the Applicant's father naturalized in 1993, the Applicant maintains that his father, born in Germany in 1960, derived citizenship through his paternal grandmother at the time she naturalized as a U.S. citizen in 1975 under former section 321 of the Act, 8 U.S.C. § 1432, repealed by Sec. 103(a), title I, Child Citizenship Act of 2000 (CCA), Pub. L. No. 106-395, 114 Stat. 1631 (2000), which governs derivative citizenship of foreign-born children in cases where the last qualifying event took place between December 24, 1952 (the effective date of the Act) and February 27, 2001 (the date

In support of his Form N-600, the Applicant submitted his birth certificate, his parents' marriage certificate showing their marriage in 1985, and his father's birth certificate and 1993 certificate of naturalization. On appeal, the Applicant submits a copy of his paternal grandmother's 1975 certificate of naturalization; his father's high school diploma, school records, and social security earnings record as proof of his father's physical presence in the United States prior to the Applicant's birth; and other documents previously submitted with his Form N-600.

Because the Applicant was born abroad, he is presumed to be a noncitizen and bears the burden of establishing his claim to U.S. citizenship by a preponderance of credible evidence. *Matter of Baires-Larios,* 24 I&N Dec. 467, 468 (BIA 2008). Under the preponderance of the evidence standard, the Applicant must demonstrate that his claim is "probably true," or "more likely than not." *Matter of Chawathe,* 25 I&N Dec. at 376.

Section 301(g) of the Act states, in pertinent part, that a person born outside the United States to one U.S. citizen and one noncitizen parent will be a U.S. citizen at birth if, prior to the applicant's birth, the U.S. citizen parent was "physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years…."

As noted above, the Director denied the Applicant's Form N-600, in part, after concluding that he was not residing in the United States and therefore did not satisfy the requirements of section 301(g) of the Act. Section 301(g) of the Act, as in effect since November 14, 1986, however, does not require an applicant to be residing in the United States to establish they acquired U.S. citizenship at birth.[2] Rather, as indicated above, applicants must establish that their U.S. citizen parent satisfied the physical presence requirement set forth in section 301(g) of the Act.

We will therefore remand the matter to the Director to reconsider the Applicant's claim that he established his acquisition of U.S. citizenship at birth through his father under the correct eligibility criteria at section 301(g) of the Act.[3]

**ORDER:**   The Director's decision is withdrawn. The matter is remanded for the entry of a new decision consistent with the foregoing analysis.

---

when the Child Citizenship Act took effect). Government records reflect that the Applicant's father has been issued two registration numbers. The record under the first registration number shows the father was admitted for lawful permanent residence in the United States in 1963 at the same time as the paternal grandmother. The second registration number shows that the father was admitted for lawful permanent residence in the United States a second time in 1986 and subsequently naturalized in 1993.

[2] An applicant need not be in the United States to establish their acquisition of citizenship at birth under section 301(g) of the Act but must be in the United States to obtain their Certificate of Citizenship. *See* section 341(a) of the Act (stating "a person…who is a citizen of the United States by virtue of the provisions of…paragraph (c), (d), (e), or (g) of section 301 [of the Act]…may apply to the [Secretary of the Department of Homeland Security] for a certificate of citizenship…" and "[u]pon proof…that the applicant is a citizen…such individual shall be furnished by the [Secretary of the Department of Homeland Security] with a certificate of citizenship, *but only if such individual is at the time within the United States.*") (emphasis added).

[3] The Applicant does not address the Director's findings with respect to his ineligibility to derive or acquire citizenship

2



**U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the Administrative Appeals Office**

---

under sections 320 and 322 of the Act, respectively. We note that he Director erroneously concluded that the Applicant was ineligible to derive citizenship under section 320 of the Act because the Applicant was not physically present in the United States. Section 320 of the Act does not have a physical presence requirement; however, the Applicant remains ineligible to derive citizenship under that section because he was not residing in the United States pursuant to lawful admission for permanent residence while under the age of 18 years. The Director correctly concluded that the Applicant was ineligible to acquire citizenship under section 322 of the Act because he was not under age 18. Regardless, we need not further address these issues as the Applicant does not claim derivation or acquisition of citizenship under these sections of the Act.



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Administrative Appeals Office*
5900 Capital Gateway Drive, Mail Stop 2090
Camp Springs, MD 20588-0009

**U.S. Citizenship
and Immigration
Services**

MATTHEW CHANDLER
2398 SW RANCH AVE
PORT ST LUCIE FL  34953

DATE:  SEPT. 18, 2025          FILE #:  A231881956
                               I-290B RECEIPT #:  IOE0930627857

IN RE:        MATTHEW CHANDLER

ON BEHALF OF APPLICANT:

AHMAD YAKZAN, ESQUIRE
AMERICAN DREAM LAW OFFICE PLLC
4815 E BUSCH BLVD STE 206
TAMPA FL  33617

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case.  All documents have been returned to the office that originally decided your case. If you have any further questions about your case, please call the USCIS Contact Center at (800) 375-5283.

Sincerely,

Susan Dibbins
Chief, Administrative Appeals Office

REV 7/2025                                                    www.uscis.gov



**U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the Administrative Appeals Office**

In Re: 38793002

Date: SEPT. 18, 2025

Appeal of Field Operations Directorate (FOD) Decision

Form N-600, Application for Certificate of Citizenship

The Applicant seeks a Certificate of Citizenship to reflect that he acquired U.S. citizenship from his U.S. citizen parent under section 301(g) of the Act, 8 U.S.C. § 1401(g).

Field Operations Directorate (FOD) initially denied the Form N-600, Application for Certificate of Citizenship (Form N-600), concluding, among other things, that the Applicant was not residing in the United States at the time of filing the Form N-600 and therefore did not satisfy the requirements of section 301(g) of the Act. In our subsequent appellate decision, which we incorporate here by reference, we withdrew FOD's finding that an N-600 applicant must be residing in the United States to satisfy the requirements at section 301(g) of the Act and remanded the matter in order for FOD to fully adjudicate the Form N-600 based on the eligibility criteria at section 301(g) of the Act.

On remand, FOD denied the Form N-600 after concluding, among other things,[1] that the Applicant had not established that his father was a U.S. citizen when the Applicant was born, as required to satisfy section 301(g) of the Act.[2] The matter is now before us on appeal pursuant to 8 C.F.R. § 103.3.

We review the questions in this matter de novo. *Matter of Christo's, Inc.*, 26 I&N Dec. 537, 537 n.2 (AAO 2015). Upon de novo review, we will sustain the appeal.

## I. LAW

The record reflects that the Applicant was born in Germany in June 1991, to married, foreign national parents: a father named T-M-C-, who was born in Germany in August 1960, and a foreign national mother named C-E-C-.[3] The Applicant's record before FOD reflects that T-M-C- was lawfully admitted to the United States as a permanent resident in 1986, and a Certificate of Naturalization shows that T-M-C- became a naturalized U.S. citizen in September 1993. The Applicant claims,

---

[1] FOD also concluded that the Applicant did not establish he was eligible for a Certificate of Citizenship under the following: section 320 of the Act, 8 U.S.C. § 1431; former section 321 of the Act, 8 U.S.C. § 1432; and section 322 of the Act, 8 U.S.C. § 1433.

[2] Repealed by Sec. 103(a), title I, Child Citizenship Act of 2000 (CCA), Pub. L. No. 106-395, 114 Stat. 1631 (2000), which governs derivative citizenship of foreign-born children in cases where the last qualifying event took place between December 24, 1952 (the effective date of the Act) and February 27, 2001 (the date the CCA became effective).

[3] We withhold names to protect the individuals' privacy.

however, that T-M-C- was erroneously required to naturalize in 1993 because he was already a U.S. citizen at the time of the Applicant's birth as he had actually derived U.S. citizenship in June 1975, when the Applicant's paternal grandmother became a naturalized U.S. citizen.

The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth. *See Chau v. Immigration and Naturalization Service*, 247 F.3d 1026, 1029 n.3 (9th Cir. 2001) (internal quotation marks and citation omitted). Based on the Applicant's year of birth in 1991 and his assertion that he was born in wedlock to a U.S. citizen father, his U.S. citizenship claim as a child born in wedlock to an alien and a citizen parent falls under the provisions of section 301(g) of the Act.

Section 301(g) of the Act states, in pertinent part, that a person born outside the United States to one U.S. citizen and one noncitizen parent will be a U.S. citizen at birth if, prior to the applicant's birth, the U.S. citizen parent was "physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years . . . ."

With respect to the Applicant's claim that his father was already a U.S. citizen when the Applicant was born in 1991, the applicable law for derivative citizenship purposes is "the law in effect at the time the critical events giving rise to eligibility occurred." *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005). Therefore, based on the Applicant's father's year of birth in 1960 and the year when the father turned 18 (1978), the father's derivative citizenship claim falls under the provisions of former section 321 of the Act then in effect.

Former section 321 of the Act provided, in pertinent part, that:

(a) A child born outside of the United States of [foreign national] parents, or . . . [a foreign national] parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if-

(4) Such naturalization takes place while such child is under the age of 18 years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the

2

> parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of 18 years.

Because the Applicant was born abroad, he is presumed to be a foreign national and bears the burden of establishing his claim to U.S. citizenship by a preponderance of credible evidence. *See Matter of Baires,* 24 I&N Dec. 467, 468 (BIA 2008). The "preponderance of the evidence" standard requires that the record demonstrate the Applicant's claim is "probably true," based on the specific facts of his case. *See Matter of Chawathe,* 25 I&N Dec. 369, 376 (AAO 2010).

## II. ANALYSIS

The issues before us on appeal are whether the Applicant has established that his father derived U.S. citizenship under former section 321 of the Act prior to the Applicant's birth in 1991, and, if so, whether his father satisfied the statutory physical presence requirements to transmit U.S. citizenship to the Applicant at birth under section 301(g) of the Act.

The Applicant claims that his own father, T-M-C-, was lawfully admitted to the United States as a permanent resident at the age of six years and subsequently derived U.S. citizenship through the Applicant's paternal grandmother, M-C-, under former section 321 of the Act when she became a naturalized U.S. citizen in 1975.

FOD initially denied the Form N-600 after erroneously concluding that the Applicant had to be residing in the United States in order to seek approval of a Form N-600 application under section 301(g) of the Act. In our prior appellate decision, we withdrew FOD's finding and remanded the matter in order for FOD to determine whether or not the Applicant established his eligibility for a Certificate of Citizenship under the correct statutory criteria at section 301(g) of the Act.

On remand, FOD again denied the Form N-600 application on new grounds after concluding, among other things, that the Applicant did not provide evidence establishing that his father had derived U.S. citizenship through his own mother's 1975 naturalization as he claimed, and therefore the Applicant did not establish that he was born to a U.S. citizen parent, as section 301(g) of the Act requires.

On appeal, the Applicant argues that FOD's new denial is erroneous because, he claims, it is on the same basis as its first denial (i.e., that the Applicant resides outside of the United States), which we withdrew. He further contends that our prior decision to remand the matter was in fact a directive that FOD approve the Form N-600. However, the Applicant misconstrues both our prior decision and FOD's second denial.

As an initial matter, our prior remand decision did not direct FOD to approve the Form N-600. Instead, we simply withdrew the initial erroneous finding that a Form N-600 applicant residing abroad is ineligible to seek a Certificate of Citizenship under section 301(g) of the Act, and we then remanded the matter for further adjudication under the correct statutory requirements. Moreover, the most recent denial of the Applicant's Form N-600 by FOD is not identical to the first erroneous decision. As stated, in the second denial, FOD explained that the Applicant did not establish that his father was a U.S. citizen at the time of the Applicant's birth in 1991 as required under section 301(g) of the Act,

where the record reflected that the father became a naturalized U.S. citizen in 1993 and did not previously derive citizenship in 1975 as the Applicant claimed. On appeal, the Applicant has overcome the FOD's determination.

A. Citizenship Claim of Applicant's Parent under Former Section 321 of the Act

With respect to the assertion that his father, T-M-C-, derived U.S. citizenship in 1975, the Applicant did not include evidence that his father was lawfully admitted to the United States as a permanent resident at the age of six years, as claimed, or any time before his 18th birthday. However, a review of his father's U.S. Citizenship and Immigration Services (USCIS) administrative record reflects that T-M-C- was born in Germany in 1960 to married, foreign national parents (a mother named M-C- and a father named G-H-) who subsequently divorced in Germany in 1962. Information on a Form FS-511, Immigrant Visa and Alien Registration, shows that on November 13, 1963, the U.S. Consulate General, Hamburg, Germany issued immigrant visas to M-C- and the Applicant's father, T-M-C-. Moreover, the Form FS-511 is stamped to show that T-M-C- was inspected and lawfully admitted to the United States as a lawful permanent resident by an officer of the former U.S. Immigration and Naturalization Service in New York, New York on November 20, 1963 (at age three). M-C- remarried a U.S. citizen named J-C- in October 1965, and German adoption records establish that J-C- subsequently adopted T-M-C- in December 1967, while serving with the U.S. military. According to USCIS records, M-C- became a naturalized U.S. citizen in June 1975, while T-M-C- was still under the age of 18 and residing in her (and his adoptive father's) legal and physical custody pursuant to a lawful admission for permanent residence at their shared residence in Tennessee. As a consequence, the record before us contains sufficient information to establish that T-M-C- derived U.S. citizenship from his own mother, M-C-, under former section 321 of the Act on June 16, 1975, the date that M-C- became a naturalized U.S. citizen.

B. Citizenship Claim of Applicant under Section 301(g) of the Act.

Because the record establishes that the Applicant's father, T-M-C-, derived U.S. citizenship from his own mother when she naturalized on June 16, 1975, it also establishes that the Applicant was born in 1991 to a U.S. citizen parent, as required by section 301(g) of the Act. Moreover, there is sufficient evidence to show that the Applicant's parents were married when he was born and that his U.S. citizen parent was "physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years . . ." prior to the Applicant's birth in 1991, as required to satisfy the parental U.S. physical presence conditions at section 301(g) of the Act.

The Applicant provided the following evidence showing that T-M-C- was physically present in the United States prior to the Applicant's 1991 birth: five years of school transcripts showing that T-M-C- attended school in Tennessee beginning in August of 1973 (when he had turned 13 years of age) through the spring of 1978, the year he turned 18 years of age (approximately 45 months of school); a High School Diploma showing that T-M-C- graduated from his final year of high school in West Virginia in May 1979; and a U.S. social security statement showing that T-M-C-'s annual U.S. earnings varied between $4,238 and $13,855 from 1986 through 1990 (with at least three years of earnings reflecting full-time employment in 1987, 1988, and 1990). In addition, USCIS records for T-M-C- and his mother, M-C-, collectively indicate that T-M-C- was likely present in the United States

4

for over four years as a child prior to the June 1975 date that M-C- became a naturalized U.S. citizen (November 1963 to February 1965 (15 months); February 1968 to September 1969 (16 months); and June 1972 to June 1975 (36 months)). Because this physical presence, totaling over five years (with at least two years being after his 14th birthday), occurred before the Applicant's birth in 1991, a preponderance of the evidence shows that the father meets the overall five-year U.S. physical presence requirement of section 301(g) of the Act to transmit U.S. citizenship to the Applicant at birth.

The Applicant has demonstrated by a preponderance of the evidence that he was born in wedlock to a U.S. citizen father who was physically present in the United States for at least five years before the Applicant's birth, and that at least two of those years were after the father's 14th birthday. Thus, the Applicant has met his burden of proof to establish that he acquired U.S. citizenship at birth from his father and that he is therefore eligible for issuance of a Certificate of Citizenship under section 301(g) of the Act.

**ORDER:**     The appeal is sustained.

5